1

2

3

4

5

6

7

8                                    NOT FOR CITATION

9                        IN THE UNITED STATES DISTRICT COURT

10                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   RICHARD G. MORENO,                )        No. C 09-0099 JF (PR)
                                       )
13                        Petitioner,  )        ORDER DENYING PETITION FOR
                                       )        WRIT OF HABEAS CORPUS AND
14      vs.                            )        DENYING CERTIFICATE OF
                                       )        APPEALABILITY
15   BEN CURRY, Warden,                )
                                       )
16                        Respondent.  )
     _____ )
17

18          Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254, challenging the decision of the Board of Parole Hearings

20   (the "Board") finding him unsuitable for parole.  The Court found that the petition stated

21   cognizable claims and ordered Respondent to show cause why the petition should not be

22   granted. Respondent filed an answer addressing the merits of the petition, and Petitioner

23   filed a traverse.  Having reviewed the papers and the underlying record, the Court

24   concludes that Petitioner is not entitled to relief based on the claims presented and will

25   deny the petition.

26   ///

27   ///

28   ///

1

**BACKGROUND**

2      According to the petition, in 1972 Petitioner was sentenced to a term of seven

3  years to life in state prison after being found guilty by a jury of first degree murder and

4  robbery.  On September 6, 2007, the Board held Petitioner's eighteenth parole suitability

5  hearing and concluded that he was not suitable for parole.  (Pet. 6a.)  Petitioner filed

6  habeas petitions in the state superior court, the court of appeal, and the supreme court, and

7  all were denied.  (Pet. 4-5.)

8

9

**DISCUSSION**

10  **A.    Standard of Review**

11      This Court will entertain a petition for a writ of habeas corpus "in behalf of a

12  person in custody pursuant to the judgment of a State court only on the ground that he is

13  in custody in violation of the Constitution or laws or treaties of the United States."  28

14  U.S.C. § 2254(a).  The petition may not be granted with respect to any claim adjudicated

15  on the merits in state court unless the state court's adjudication of the claim: "(1) resulted

16  in a decision that was contrary to, or involved an unreasonable application of, clearly

17  established federal law, as determined by the Supreme Court of the United States; or (2)

18  resulted in a decision that was based on an unreasonable determination of the facts in

19  light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

20      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

21  state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

22  question of law or if the state court decides a case differently than [the] Court has on a set

23  of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-413

24  (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the

25  writ if the state court identifies the correct governing legal principle from [the] Court's

26  decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.

27  at 413.  "[A] federal habeas court may not issue the writ simply because that court

28  concludes in its independent judgment that the relevant state-court decision applied

1    clearly established federal law erroneously or incorrectly.  Rather, that application must
2    also be unreasonable."  Id. at 411.

3        "[A] federal habeas court making the 'unreasonable application' inquiry should
4    ask whether the state court's application of clearly established federal law was
5    'objectively unreasonable.'"  Id. at 409.  In examining whether the state court decision
6    was objectively unreasonable, the inquiry may require analysis of the state court's method
7    as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The
8    standard for "objectively unreasonable" is not "clear error" because "[t]hese two
9    standards . . . are not the same.  The gloss of error fails to give proper deference to state
10   courts by conflating error (even clear error) with unreasonableness."  Lockyer v.
11   Andrade, 538 U.S. 63, 75 (2003).

12       A federal habeas court may grant the writ if it concludes that the state court's
13   adjudication of the claim "results in a decision that was based on an unreasonable
14   determination of the facts in light of the evidence presented in the State court
15   proceeding."  28 U.S.C. § 2254(d)(2).  The court must presume correct any determination
16   of a factual issue made by a state court unless the petitioner rebuts the presumption of
17   correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

18       Where, as here, the highest state court to consider Petitioner's claims issued a
19   summary opinion which does not explain the rationale of its decision, federal review
20   under § 2254(d) is of the last state court opinion to reach the merits.  See Ylst v.
21   Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-
22   78 (9th Cir. 2000).  In this case, the last state court opinion to address the merits of
23   Petitioner's claims is the opinion of the Sacramento Superior Court for (Resp't Ex. 2 (In
24   re Richard Moreno, Case No. 08FO3393  July 22, 2008).)

25   **B.    Analysis**

26       **1.    Liberty Interest**

27       Respondent asserts in his answer that California prisoners have no liberty interest
28   in parole, and that if they do, the only due process protections available are a right to be

heard and a right to be informed of the basis for the denial, and not a right to a result supported by sufficient evidence.  Respondent acknowledges that this contention is made only to preserve the issue for appeal.  As discussed further below, even after the en banc decision in Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), Ninth Circuit case law does not support Respondent's position..  See Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) (California law creates a federal liberty interest in parole; that liberty interest encompasses the state-created requirement that a parole decision must be supported by "some evidence" of current dangerousness); Cooke v. Solis, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (same); Pearson v. Muntz, 606 F.3d 606, 610-11 (9th Cir. 2010) (same).

### 2.     **Sufficiency of the Evidence**

Petitioner claims that the Board's denial of parole violated his due process rights because there was no evidence to support it.  (Pet. 6a.)

### A.     **Impact of *Hayward***[1]

In Hayward the Ninth Circuit held en banc that there is no constitutional right to "release on parole, or to release in the absence of some evidence of future dangerousness," arising directly from the Due Process Clause of the Constitution; instead, any such right "has to arise from substantive state law creating a right to release." Hayward, 603 F.3d at 555.  The court overruled Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003); Sass v. California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006); and Irons v. Carey, 505 F.3d 846 (9th Cir. 2007), "to the extent they might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release . . . ."  Hayward, 603 F.3d at 556.  All three cases had discussed the "some evidence" requirement, but in all three it was clear that the requirement stemmed from a liberty interest created by state law.  See Biggs, 334 F.3d at 914-15; Sass, 461 F.3d at 1127-19; Irons, 505 F.3d at 850-51; see also Cooke v. Solis, 606 F.3d 1206, 1213-14 (9th

---

[1]Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc).

Cir. 2010) (post-<u>Hayward</u> case; noting that California law gives rise to a liberty interest in parole).  However, all three also contained references in dicta to the possibility that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, [would] run[] contrary to the rehabilitation goals espoused by the prison system and could result in a due process violation." <u>Biggs</u>, 334 F.3d at 916-17; <u>see</u> <u>also</u> <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 505 F.3d at 853-54.

Aside from making clear that there could be no *"<u>Biggs</u>* claim" arising directly from the Due Process Clause of the Constitution, it appears that <u>Hayward</u> has had no significant impact on federal habeas review of California parole decisions.  The Ninth Circuit still recognizes that California law gives rise to a liberty interest in parole.  <u>Pirtle</u>, 611 F.3d at 1020; <u>Cooke</u>, 606 F.3d at 1213-14; <u>Pearson</u>, 606 F.3d at 610-11.  Under California law, "some evidence" of current dangerousness is required in order to deny parole.  <u>Hayward</u>, 603 F.3d at 562 (citing <u>In re Lawrence</u>, 44 Cal.4th 1181, 1205-06 (2008), and <u>In re Shaputis</u>, 44 Cal.4th 1241 (2008)).  "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state." <u>Cooke</u>, 606 F.3d at 1213.  A federal court considering a "some evidence" claim directed to a parole denial thus must determine whether there was "some evidence" of current dangerousness to support the parole board's decision; if not, the prisoner's due process rights were violated.  This also was true prior to <u>Hayward</u>, though now is that the Court is applying California's "some evidence" rule as a component of federal due process.

### B.   <u>Petitioner's Case</u>

A federal district court reviewing a California parole decision "must determine 'whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" <u>Hayward</u>, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)).  That requirement was summarized in <u>Hayward</u> as follows:

> [a]s a matter of California law, 'the paramount consideration for both the

1
2
3
4
5

Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.'  There must be 'some evidence' of such a threat, and an aggravated offense 'does not, in every case, provide evidence that the inmate is a current threat to public safety.'  The prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness.  Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, 'a current threat to public safety.'

6
7
8

Id. at 562 (quoting Lawrence, 44 Cal. 4th. at 1191, 1209-15); see also Cooke, 606 F.3d at 1214 (describing California's "some evidence" requirement).

9
10
11
12
13
14

When a federal court considers a habeas case directed to a parole decision, the "necessary subsidiary findings" and the "ultimate 'some evidence' findings" by the state courts are factual findings – and thus are reviewed by the federal court under 28 U.S.C. § 2254(d)(2) for whether the decision was "based on an unreasonable determination of the facts in light of the evidence."  Cooke, 606 F.3d at 1214 (citing Hayward, 603 F.3d at 563).

15
16
17

Here, the nature of the offense was one basis for the Board's conclusion that Petitioner would be a danger to society if paroled.  (Tr. 139-43.)[2]  The Board read into the record the facts of the crime as set out the appellate opinion:

18
19
20
21
22
23
24
25

On the morning of December 12th, 1971, Francinimo opened his grocery store in Lincoln, Placer County, observed [sic] three men sitting in a car in front of the store in circumstances sufficiently suspicious to prompt him to note the license number of the car.  Shortly thereafter, one [of] the men entered the store, and he was followed within minutes by a man subsequently identified as the defendant, Mr. Moreno, who entered the store and pulled over his face a disguise described as a blue cap with eyes cut out.  The defendant was observed to be holding a sawed-off shotgun in his hand, and during the course of the ensuing robbery, currency was removed from the cash register and from Mr. Francinimo's wallet.  After the safe was ordered to be opened, Francinimo and a customer were ordered into the meat locker.

[¶]The Lincoln Police Department was then notified by Francinimo. As the robbers left the market, they were observed by witness Carl Asencia to be driving a blue Chevrolet Nova and headed north.  Carl Asencia followed the robbers, [and] waved down Officer Schellbach of the Lincoln Police Department, who joined the pursuit.

26
27
28

[2] The pages of the decision portion of the transcript are both (1) separately numbered and (2) consecutively numbered as part of the overall transcript.  For clarity, the consecutive numbers are used in citations to the decision.

[¶]Within moments, Sergeant Barroso . . . of the Lincoln Police Department received a call frm the dispatcher that an armed robbery had occurred.  At this time, Sergeant Barroso, while in his own vehicle and in civilian clothes observed a blue Nova run a stop sign.  He then pursued the Nova but it ran into a ditch.  Barroso stopped his car, identified himself as a police officer, and shouted to the three occupants, 'Police Officer, come out with your hands up.'  This was answered by a shot which struck him in the head and side.  Although wounded, he ran to a nearby farm house to call police.

[¶]A neighbor, hearing a series of shots, then observed Barroso's station wagon being driven away, while Carl Asencia, who had been pursuing the Nova, arrived in its vicinity.  He found Officer Schellbach mortally wounded.  Carl Asencia then radioed for an ambulance, but Schellbach . . . died momentarily as a result of gunshot wounds to the head.

[¶]The Nova, which remained in the ditch, contained $1,038 in cash as well as a Colt rifle, empty shell casings, five shotgun rounds, two pry bars, an axe with its handle removed, and a blue knit cap with eye holes cut out.  The blue Nova was subsequently identified as the one belonging to Susan Brown, whose boyfriend, Marquez . . . got the car for Denning and Porter.  These are codefendants, . . . defendant's two accomplices.

[¶]On the day before the shooting, Marquez had seen Denning working on a shotgun in an apartment shared by the defendant, Mr. Moreno, with Juan Garcia . . . .  On the day of the incident Porter and Denning arrived at the apartment with muddy shoes and in an apparent nervous, upset condition.  They told Garcia they had a shootout with a citizen, and when the defendant arrived at the apartment, Porter told him to return to pick up the money.  Garcia then overheard the three men talking about an officer who had been shot.

[¶]The defendant was arrested at this apartment in Sacramento by Sacramento County Sheriff's Officers, the evening of December (inaudible) 1971.  On December 17th, 1971, Francinimo, while at the Placer County District Attorney's Office, identified a picture of the defendant, Mr. Moreno as one of the men who had robbed him.  His identification was based on what he observed at the incident.  A witness, Vernon Gray . . . , who had also seen the three men leave the market on the day of the robbery, identified the defendant as one of the robbers and further identified the defendant's photo from a group shown him at the District Attorney's Office.

(Tr. 31-35.)[3]

The presiding commissioner then read this additional material, from the 2005 Board report, "to get a greater sense of what occurred to Officer Schellbach:"

Moreno and his crime partners Dale Denning and James Porter entered East Avenue Market in Lincoln, California, where they held up and robbed the proprietor.  One of [the] robbers produced a sawed-off shotgun.  While the robbery was in progress, a store manager was able to leave and call police.  The defendants fled, and an off-duty officer, Robert Barroso[,] gave chase.

---

[3] The paragraph indentations marked by a paragraph sign in brackets are not in the original, which is one long paragraph, but have been inserted to make the passage easier to read.

[¶]The suspect over turned [sic] making a corner until it ran into a ditch. Barroso, armed with his service revolver, alighted from his car, ordered the three occupants out of their car.  He was met with gunshot blasts, which knocked him down.  He got up, emptied his revolver before stumbling to a nearby farm house to telephone for assistance.  Officer Leslie Paul Schellbach responded to the call before Officer Barroso, who was wounded, could return. Officer Schellbach was greeted with a shower of bullets, slipped out of the passenger side of his car and fired three shots before a shattered slug hit him in the chest.  He died minutes later from a severed aorta.

(Tr. 35-36.)

The Board found, in denying parole, that the facts were as quoted above.  (Tr. 140-43.)  The undisputed evidence at the hearing was that Petitioner was involved in an armed robbery and then a major shootout with police, a shootout that resulted in one officer dying and another very seriously wounded.  At the time these crimes were committed, Petitioner obviously posed a very serious threat to the safety of the community.

At the time of the parole hearing in 2007, petitioner was sixty-nine years old and had been incarcerated for approximately thirty-five years.  (Tr. 1, 13.)  His age and the number of years that had passed since his offense certainly reduced the predictive value of the nature of his crimes, but the Court need not decide whether the circumstances of the offense would in themselves constitute "some evidence," because the Board's denial of parole was based not only on the offense but also on other evidence.  The psychological report prepared by Dr. Brown rated Petitioner as a "low to moderate risk of violence in the community."  (Tr. 93, 144-45.)  The Board was entitled to conclude that a "moderate" risk of violence would be too high for public safety.  Petitioner would lack family or other sources of social support if he were to be released, which reasonably could be viewed making him more likely to reoffend.  (Tr. 78, 94, 100, 101-07, 146-47.) Finally, although he blamed his offense on his addiction to heroin, he was unable to name any of the steps of the twelve-step program he apparently has attended for years.  (Tr. .87-90, 96-98, 143-44.)

This evidence, together with the evidence of Petitioner's offense, suffices to satisfy the "some evidence" test.  The state courts' applications of the California "some

1   evidence" requirement, and consequent rejections of Petitioner's claims were not "based

2   on an unreasonable determination of the facts in light of the evidence."  See 28 U.S.C. §

3   2254(d)(2); Cooke, 606 F.3d at 1214 (federal habeas court considering California parole

4   "some evidence" claim must apply §  2254(d)(2)); Hayward, 603 F.3d at 562-63

5   (requiring application of California's "some evidence" standard).

6   **C.   Certificate of Appealability**

7       The federal rules governing habeas cases brought by state prisoners require a

8   district court that denies a habeas petition to grant or deny a certificate of appealability

9   ("COA") in the ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. §

10  2254.

11      A petitioner may not appeal a final order in a federal habeas corpus proceeding

12  without first obtaining a certificate of appealability (formerly known as a certificate of

13  probable cause to appeal).  See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall

14  grant a certificate of appealability "only if the applicant has made a substantial showing

15  of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The certificate must

16  indicate which issues satisfy this standard.  See id. § 2253(c)(3).  "Where a district court

17  has rejected the constitutional claims on the merits, the showing required to satisfy §

18  2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would

19  find the district court's assessment of the constitutional claims debatable or wrong."

20  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

21      For the reasons set out above, jurists of reason would not find the result debatable

22  or wrong.  A certificate of appealability will be denied.  Petitioner is advised that he may

23  not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under

24  Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a), Rules Governing §

25  2254 Cases.

26  ///

27  ///

28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

The Court concludes that Petitioner has failed to show a violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. Accordingly, the petition for writ of habeas corpus is DENIED.  A certificate of appealability also is DENIED.

IT IS SO ORDERED.

DATED: ___10/5/10_____

_____
JEREMY FOGEL
United States District Judge

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

RICHARD MORENO,

        Petitioner,

  v.

BEN CURRY, Warden,

        Respondent.

_____/

Case Number: CV09-00099 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____10/8/10_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Richard G. Moreno A52525
 Soledad State Prison
P.O. Box 689
ED-111-L
Soledad, CA 93960-0689

Dated: _____10/8/10_____

                         Richard W. Wieking, Clerk